# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# FLORENCE DIVISION

| | |
|---|---|
| U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, <br><br> Plaintiff, <br><br> v. <br><br> HM SOLUTIONS, INC., <br><br> Defendant. | **COMPLAINT AND JURY TRIAL DEMAND** |

## NATURE OF THE ACTION

This is an action under Title VII of the Civil Rights Act of 1964, as amended, and Title I of the Civil Rights Act of 1991, to correct unlawful employment practices on the basis of sex and retaliation, and to provide appropriate relief to Tarrell Hudson ("Hudson"), Tiffany Moultrie ("Moultrie), Shermiah Townsend ("Townsend"), and the estate of Sharon Cooper ("Cooper"), who were adversely affected by such practices. Specifically, Plaintiff U.S. Equal Employment Opportunity Commission (the "Commission") alleges that Defendant HM Solutions, Inc. ("Defendant") discriminated against Hudson, Moultrie, Townsend, and Cooper by subjecting them to a hostile work environment based on their sex (female). The Commission further alleges that Defendant discriminated against Cooper, Hudson, Moultrie, and Townsend by terminating their employment in retaliation for their complaints about the sexual harassment, also in violation of Title VII.

## JURISDICTION AND VENUE

1. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343 and 1345. This action is authorized and instituted pursuant to Section 706(f)(1) and (3) of Title

1

VII of the Civil Rights Act of 1964, as amended, 42 U.S.C.§ 2000e-5(f)(1) and (3) ("Title VII"), and pursuant to Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

2. The employment practices alleged to be unlawful were committed within the jurisdiction of the United States District Court for South Carolina, Florence Division. This lawsuit is being filed in the Florence Division because a substantial part of the events or omissions giving rise to the claims alleged in this suit occurred within the Florence Division.

## PARTIES

3. Plaintiff, the Commission, is the agency of the United States of America charged with the administration, interpretation and enforcement of Title VII and is expressly authorized to bring this action by Sections 706(f)(1) and (3) of Title VII, 42 U.S.C. § 2000e-5(f)(1) and (3).

4. At all relevant times, Defendant, a South Carolina corporation, has continuously been doing business in Florence, South Carolina, and has continuously had at least 15 employees.

5. At all relevant times, Defendant has continuously been an employer engaged in an industry affecting commerce under Sections 701(b), (g) and (h) of Title VII, 42 U.S.C. § 2000e (b), (g) and (h).

## CONDITIONS PRECEDENT

6. More than thirty days prior to the institution of this lawsuit, Tarrell Hudson filed a charge with the Commission alleging violations of Title VII by Defendant.

7. More than thirty days prior to the institution of this lawsuit, Tiffany Moultrie filed a charge with the Commission alleging violations of Title VII by Defendant.

8. More than thirty days prior to the institution of this lawsuit, Shermiah Townsend filed a charge with the Commission alleging violations of Title VII by Defendant.

9. More than thirty days prior to the institution of this lawsuit, Sharon Cooper filed a charge with the Commission alleging violations of Title VII by Defendant.

10. On February 22, 2019, the Commission issued to Defendant a Determination on each of the four charges separately filed by Hudson, Moultrie, Townsend, and Cooper. Each Determination found reasonable cause to believe that Title VII was violated and invited Defendant to join with the Commission in informal methods of conciliation to endeavor to eliminate the unlawful employment practices and provide appropriate relief.

11. The Commission engaged in communications with Defendant to provide Defendant the opportunity to remedy the discriminatory practices described in the Determinations.

12. The Commission was unable to secure from Defendant conciliation agreements acceptable to the Commission.

13. On March 21, 2019, the Commission issued to Defendant a Notice of Failure of Conciliation on each of the four charges separately filed by Hudson, Moultrie, Townsend, and Cooper.

14. All conditions precedent to the initiation of this lawsuit have been fulfilled.

## FACTS RELEVANT TO ALL CLAIMS

15. From at least July 15, 2015 to at least March 30, 2017, Defendant engaged in unlawful employment practices in violation of Section 703(a)(1) of Title VII, 42 U.S.C. § 2000(e)-(2)(a)(1), and Section 704(a) of Title VII, 42 U.S.C. § 2000e-3(a), as more fully described below. Specifically, Defendant discriminated against Hudson, Moultrie, Townsend, and Cooper by subjecting them to a sexually hostile work environment and discharging them in retaliation for engaging in activity protected under Title VII.

16. At all relevant times, Defendant provided janitorial services for an automotive battery recycling facility located in Florence, South Carolina, which was operated by a client (the "Client") of Defendant (the "Florence facility").

17. At all relevant times, Defendant employed an Account Manager who was assigned to the Florence facility.

18. The Account Manager was the most-senior Defendant official at the Florence facility.

19. The Account Manager was responsible for Defendant's day-to-day operations at the Florence facility.

20. The Account Manager had the authority to hire employees to work for Defendant at the Florence facility.

21. The Account Manager had the authority to terminate Defendant employees who worked at the Florence facility.

22. The Account Manager had the authority to discipline Defendant employees who worked at the Florence facility.

23. The Account Manager was responsible for implementing Defendant's policies and procedures with regard to employees of Defendant who worked at the Florence facility, specifically including any anti-harassment and retaliation policies.

24. From at least July 15, 2015 through on or around October 23, 2016, Defendant employed W.G.[1] as Account Manager at the Florence facility.

---

[1] With the exception of Hudson, Moultrie, Townsend, and Cooper, each individual referenced "by name" in this complaint shall be identified by his/her initials.

25. Beginning on or around October 23, 2016, Defendant employed L.P. as Account Manager at the Florence facility.

26. At all relevant times, Defendant employed Shift Supervisors at the Florence facility who directed the day-to-day work of Defendant employees at the Florence facility.

27. The Shift Supervisors were responsible for training Defendant employees who worked at the Florence facility.

28. The Shift Supervisors had the authority to discipline Defendant employees who worked at the Florence facility.

29. The Shift Supervisors had the authority to send home from work Defendant employees who worked at the Florence facility.

30. The Shift Supervisors had the authority to recommend the termination of Defendant employees who worked at the Florence facility to the Account Manager.

31. The Shift Supervisors were responsible for implementing Defendant's policies and procedures with regard to employees of Defendant who worked at the Florence facility, specifically including any anti-harassment and retaliation policies.

32. From at least July 15, 2015 through on or around October 23, 2016, Defendant employed L.P. as a Shift Supervisor at the Florence facility.

33. From at least July 15, 2015 through on or around January 17, 2016, Defendant employed D.J. as a Lead at the Florence facility.

34. Beginning on or around January 17, 2016, Defendant employed D.J. as a Shift Supervisor at the Florence facility.

35. In or around December 2016, Defendant held a mandatory meeting for all Defendant employees assigned to the Florence facility.

36. During the aforementioned mandatory meeting, Defendant's Owner instructed employees not to complain to him or the Client about any employment issues, specifically including sexual harassment.

37. During the aforementioned mandatory meeting, Defendant's Owner informed the employees that he did not believe the allegations of sexual harassment that had been made against L.P.

38. During the aforementioned mandatory meeting, Defendant's Owner threatened to terminate any employee who complained about employment issues, including sexual harassment.

## STATEMENT OF CLAIMS – TARRELL HUDSON

39. The allegations set forth in paragraphs 15 through 38 are incorporated as if set forth fully herein.

40. On or around July 17, 2015, Defendant hired Hudson as a Housekeeper at the Florence facility.

41. On or around December 12, 2016, Defendant promoted Hudson to Janitorial Supervisor over third shift.

42. Hudson is a female.

*Harassment/Hostile Work Environment*

43. From at least July 2016 through at least January 23, 2017, Hudson was subjected to sexual harassment by Lead/Shift Supervisor D.J. ("Harasser One") and Shift Supervisor/Account Manager L.P. ("Harasser Two").

44. The sexual harassment by Harasser One included but was not limited to Harasser One making sexualized comments to Hudson on a daily or near-daily basis, including comments regarding performing oral sex on or having sex with Hudson.

6

45. In or around July 2016, Harasser One chased Hudson around her car in the parking lot of the Florence facility, while repeatedly saying that he wanted to "eat [her] out" (*i.e.*, perform oral sex on Hudson).

46. Harasser One's sexual conduct was uninvited by Hudson and unwelcome to Hudson. Hudson was offended by the conduct of Harasser One.

47. Hudson directly objected to the sexual harassment to Harasser One, including by telling Harasser One to stop making the sexual comments.

48. Immediately after being chased around her car by Harasser One, Hudson called then-Account Manager W.G. and complained about the sexual harassment.

49. In or around late July 2016, Hudson again complained to then-Account Manager W.G. about Harasser One's sexual comments.

50. Despite Hudson's direct objections to Harasser One and complaints to Defendant's Account Manager, the sexual harassment by Harasser One continued following each objection and complaint.

51. The sexual harassment by Harasser Two included but was not limited to Harasser Two making sexualized comments to Hudson on a near-daily basis, such as asking Hudson if she wanted to "fuck," asking Hudson to be "secret lovers," sending Hudson sexualized text messages, and forcibly kissing Hudson and putting his tongue in Hudson's mouth.

52. Hudson directly objected to the sexual harassment to Harasser Two, including by telling Harasser Two to stop making the sexual comments.

53. On the day Harasser Two forcibly kissed Hudson, Hudson reported Harasser Two's forcible kiss to then-Account Manager W.G.

54. In or around early January 2017, Hudson complained to Shift Supervisor W.C. about the ongoing sexual harassment and informed W.C. about her prior complaints to Account Manager W.G.

55. Despite Hudson's direct objections to Harasser Two and complaints to Defendant's supervisors and/or managers, the sexual harassment by Harasser Two continued following each objection and complaint.

56. The sexual harassment of Hudson was witnessed by other employees, including supervisors and managers, who failed take effective action to stop the harassment.

57. Defendant subjected Hudson to sexual harassment that created a sexually hostile work environment.

58. As a result of Hudson's refusal to acquiesce to the sexual harassment by Harasser One and/or Harasser Two, Defendant discharged Hudson on or around January 23, 2017.

*Retaliation*

59. Alternatively, Defendant discharged Hudson in retaliation for engaging in activity protected under Title VII.

60. Among other times, Hudson complained about sexual harassment approximately one week prior to her Janitorial Supervisor position being eliminated.

61. On or around January 12, 2017, Harasser Two told Hudson that her Janitorial Supervisor position was eliminated effective immediately.

62. On or around January 12, 2017, Hudson told Defendant's Owner that she (Hudson) believed she was being terminated in retaliation for her complaints about sexual harassment.

63. On or around January 16, 2017, Harasser Two left a message for Hudson stating he wanted to discuss a new position with her.

64. Hudson returned Harasser Two's telephone message and sent text messages to Harasser Two about the new position. Harasser Two did not respond to Hudson's attempts to contact him.

65. On or around January 23, 2017, Defendant terminated Hudson's employment.

## STATEMENT OF CLAIMS – TIFFANY MOULTRIE

66. The allegations set forth in paragraphs 15 through 38 are incorporated as if set forth fully herein.

67. On or around November 6, 2015, Defendant hired Moultrie as a Housekeeper at the Florence facility.

68. Moultrie is a female.

*Harassment/Hostile Work Environment*

69. From at least December 2015 through at least January 23, 2017, Moultrie was subjected to sexual harassment by Harasser One and Harasser Two.

70. The sexual harassment by Harasser One included but was not limited to Harasser One making sexualized comments to Moultrie on a daily or near-daily basis, often while gesticulating to his penis, including comments regarding having sex with Moultrie and Moultrie's physical appearance.

71. Harasser One offered Moultrie job protection in exchange for sex. Upon information and belief, at least some of this conduct occurred during the period when Harasser One was a Shift Supervisor with direct supervisory authority over Moultrie.

72. On approximately three separate occasions, Harasser One slid his hand down Moultrie's thigh.

73. Harasser One's sexual conduct was uninvited by Moultrie and unwelcome to Moultrie. Moultrie was offended by the conduct of Harasser One.

74. Moultrie directly objected to the sexual harassment to Harasser One, including by telling Harasser One to stop making the sexual comments.

75. In or around late November or early December 2016, Moultrie complained to Harasser Two, who at the time was Defendant's Account Manager at the Facility, and Defendant's client's Human Resources Manager about Harasser One's sexual comments.

76. Despite Moultrie's direct objections to Harasser One and complaints to Defendant's Account Manager and supervisors and/or managers, the sexual harassment by Harasser One continued following each objection and complaint.

77. The sexual harassment by Harasser Two included but was not limited to Harasser Two telling Moultrie that his wife liked having sex with women and implying that Moultrie should join Harasser Two and his wife for a threesome, and directly asking Moultrie for sex.

78. Harasser Two's sexual conduct was uninvited by Moultrie and unwelcome to Moultrie. Moultrie was offended by the conduct of Harasser Two.

79. Moultrie directly objected to the sexual harassment to Harasser Two, including by rejecting Harasser Two's sexual advances.

80. Despite Moultrie's direct objections to Harasser Two, the sexual harassment by Harasser Two continued following each objection.

81. The sexual harassment of Moultrie was witnessed by other employees, including supervisors and managers, who failed take effective action to stop the harassment.

82. Defendant subjected Moultrie to sexual harassment that created a sexually hostile work environment.

83. As a result of Moultrie's refusal to acquiesce to the sexual harassment by Harasser One and/or Harasser Two, Defendant discharged Moultrie on or around January 23, 2017.

*Retaliation*

84. Alternatively, Defendant discharged Moultrie in retaliation for engaging in activity protected under Title VII.

85. Among other times, Moultrie complained about sexual harassment in or around late November or early December 2016.

86. On or around January 23, 2017, Moultrie received a telephone call from Defendant's Administrative Assistant, who summarily advised Moultrie that Moultrie's employment had been terminated.

## STATEMENT OF CLAIMS – SHERMIAH TOWNSEND

87. The allegations set forth in paragraphs 15 through 38 are incorporated as if set forth fully herein.

88. On or around September 28, 2016, Defendant hired Townsend as a Housekeeper at the Florence facility.

89. Townsend is a female.

*Harassment/Hostile Work Environment*

90. From at least October 2016 through at least February 2017, Townsend was subjected to sexual harassment by Harasser One and Harasser Two.

91. The sexual harassment by Harasser One included but was not limited to Harasser One making sexualized comments to Townsend on a daily or near-daily basis, including comments regarding having sex with Townsend and comments about Townsend's physical appearance.

92. Harasser One offered Townsend job protection and overtime work in exchange for sex. Upon information and belief, at least some of this conduct occurred during the period when Harasser One was a Shift Supervisor with direct supervisory authority over Townsend.

93. Beginning in or around late January 2016, on at least twenty (20) separate occasions, Harasser One exposed his penis to Townsend. Harasser One frequently asked Townsend to perform oral sex on him as Harasser One exposed his penis.

94. Beginning in or around late January 2016, on at least twenty (20) separate occasions, Harasser One blocked Townsend's ability to leave an enclosed office space while asking Townsend for sex.

95. Harasser One's sexual conduct was uninvited by Townsend and unwelcome to Townsend. Townsend was offended by the conduct of Harasser One.

96. Townsend directly objected to the sexual harassment to Harasser One, including by telling Harasser One to stop making the sexual comments.

97. Despite Townsend's direct objections to Harasser One and complaints to Defendant's Owner, supervisors, and/or managers, as described *infra*, the sexual harassment by Harasser One continued following each objection and complaint.

98. The sexual harassment by Harasser Two included but was not limited to Harasser Two making sexualized comments to Townsend on at least a weekly basis, including comments regarding having sex with Townsend.

99. Harasser Two offered Townsend job protection in exchange for sex. Upon information and belief, at least some of this conduct occurred during the period when Harasser Two was a Shift Supervisor with direct supervisory authority over Townsend, and when Harasser Two was Defendant's Account Manager.

100. Approximately two times per week, Harasser Two exposed his penis to Townsend. Harasser Two frequently asked Townsend for sex or oral sex as Harasser Two exposed his penis.

101. Harasser Two frequently made reference to Townsend's employment being terminated when Townsend rejected Harasser Two's sexual advances. Upon information and belief, at least some of this conduct occurred during the period when Harasser Two was a Shift Supervisor with direct supervisory authority over Townsend, and when Harasser Two was Defendant's Account Manager.

102. Harasser Two's sexual conduct was uninvited by Townsend and unwelcome to Townsend. Townsend was offended by the conduct of Harasser Two.

103. Townsend directly objected to the sexual harassment to Harasser Two, including by telling Harasser Two to stop making the sexual comments.

104. Approximately one week after being hired, Townsend complained to Defendant's Owner that Harasser Two had exposed his penis to Townsend and asked Townsend to perform oral sex.

105. Approximately two months after being hired, Townsend complained on at least four separate occasions about Harasser One's and Harasser Two's sexual harassment to Defendant's Officer Manager and Administrative Assistant.

106. In or around October 2016, Townsend complained to Defendant's Owner that Harasser Two had been sexually harassing Townsend since she started employment and she felt her job was at risk.

107. In or around October 2016, Townsend complained to then-Account Manager W.G. about Harasser Two's sexual harassment, specifically including Harasser Two asking Townsend for sex and oral sex and exposing his penis to Townsend.

108. In or around November 2016, Townsend was calling and texting Defendant's Owner approximately three times per week to report Harasser One's and Harasser Two's ongoing sexual harassment.

109. In or around November 2016, Defendant's Owner instructed Townsend to stop contacting him.

110. From in or around December 2016 through in or around March 2017, Townsend continued to report Harasser One's and Harasser Two's ongoing sexual harassment to Defendant's Office Manager, Administrative Assistant, and Shift Supervisor W.C.

111. Despite Townsend's direct objections to Harasser Two and complaints to Defendant's Owner, supervisors, and/or managers, the sexual harassment by Harasser Two continued following each objection and complaint.

112. The sexual harassment of Townsend was witnessed by other employees, including supervisors and managers, who failed take effective action to stop the harassment.

113. Defendant subjected Townsend to sexual harassment that created a sexually hostile work environment.

114. As a result of Townsend's refusal to acquiesce to the sexual harassment by Harasser One and/or Harasser Two, Defendant discharged Townsend on or around March 22, 2017.

*Retaliation*

115. Alternatively, Defendant discharged Townsend in retaliation for engaging in activity protected under Title VII.

116. Among other times, Townsend complained about sexual harassment in or around March 2017.

117. In or around January 2017, Shift Supervisor W.C. told Townsend that Harasser Two had instructed W.C. to issue spurious performance write-ups to Townsend.

118. On or around March 22, 2017, Defendant terminated Townsend's employment.

## STATEMENT OF CLAIMS – SHARON COOPER

119. The allegations set forth in paragraphs 15 through 38 are incorporated as if set forth fully herein.

120. Cooper timely filed a Charge of Discrimination with the EEOC on June 12, 2017.

121. On April 13, 2018, while the EEOC was investigating Cooper's Charge of Discrimination, Cooper passed away.

122. Cooper's causes of action survive her death under federal common law, and Cooper's estate is entitled to all damages that are non-penal in nature. EEOC, therefore, seeks all appropriate relief for Cooper's causes of action on behalf of Cooper's estate.

123. On or around October 30, 2015, Defendant hired Cooper as a Housekeeper at the Florence facility.

124. Cooper was a female.

*Harassment/Hostile Work Environment*

125. From at least mid-January 2016 through at least March 29, 2017, Cooper was subjected to sexual harassment by Harasser One and Harasser Two.

126. The sexual harassment by Harasser One included but was not limited to Harasser One making sexualized comments to Cooper on a daily or near-daily basis, including comments regarding performing oral sex on and having sex with Cooper, grabbing Cooper's vagina, and grabbing Cooper's buttocks.

15

127. Harasser One's sexual conduct was uninvited by Cooper and unwelcome to Cooper. Cooper was offended by the conduct of Harasser One.

128. Cooper directly objected to the sexual harassment to Harasser One, including by telling Harasser One to stop making the sexual comments.

129. The sexual harassment by Harasser Two included but was not limited to Harasser Two offering Cooper a promotion in exchange for sex on at least two occasions. Upon information and belief, this conduct occurred during the period when Harasser Two was Defendant's Account Manager.

130. Cooper directly objected to the sexual harassment to Harasser Two, including by rejecting Harasser Two's sexual advances.

131. In or around December 2016, before Defendant's Owner held the mandatory meeting described *supra*, Cooper complained about Harasser Two's sexual harassment to the Client's Human Resources Manager.

132. Despite Cooper's direct objections to Harasser One and Harasser Two and complaint to the Client's Human Resources Manager, the sexual harassment continued following each objection and complaint.

133. The sexual harassment of Cooper was witnessed by other employees, including supervisors and managers, who failed take effective action to stop the harassment.

134. Defendant subjected Cooper to sexual harassment that created a sexually hostile work environment.

135. As a result of Cooper's refusal to acquiesce to the sexual harassment by Harasser Two, Defendant never promoted Cooper.

16

136. As a result of Cooper's refusal to acquiesce to the sexual harassment by Harasser One and/or Harasser Two, Defendant discharged Cooper on or around March 29, 2017.

*Retaliation*

137. Alternatively, Defendant discharged Cooper in retaliation for engaging in activity protected under Title VII.

138. Cooper complained about sexual harassment in or around December 2016.

139. On or around March 29, 2017, Defendant terminated Cooper's employment.

140. The effect of the practices complained of above has been to deprive Hudson, Moultrie, Townsend, and Cooper of equal employment opportunities and otherwise adversely affect their status as employees because of their sex (female) and because of their opposition to practices made unlawful under Title VII.

141. The unlawful employment practices complained of above were intentional.

142. The unlawful employment practices complained of above were done with malice or with reckless indifference to the federally protected rights of Hudson, Moultrie, Townsend and Cooper.

## PRAYER FOR RELIEF

Wherefore, the Commission respectfully requests that this Court:

A. Grant a permanent injunction enjoining Defendant, its officers, successors, assigns, and all persons in active concert or participation with it, from harassment based on sex, including maintaining a sexually hostile work environment, or any other employment practice that discriminates on the basis sex.

B. Grant a permanent injunction enjoining Defendant, its officers, successors, assigns, and all persons in active concert or participation with it, from engaging in retaliation against

employees because they have opposed unlawful employment practices or otherwise engaged in protected activity under Title VII.

        C.      Order Defendant to institute and carry out policies, practices, and programs which provide equal employment opportunities for women and which eradicate the effects of its past and present unlawful employment practices.

        D.      Order Defendant to make Cooper's estate whole by providing appropriate back pay with prejudgment interest, in amounts to be determined at trial.

        E.      Order Defendant to make Hudson, Moultrie, and Townsend whole by providing appropriate back pay with prejudgment interest, in amounts to be determined at trial, and other affirmative relief necessary to eradicate the effects of its unlawful employment practices, including but not limited to reinstatement of Hudson, Moultrie, and Townsend or front pay in lieu thereof.

        F.      Order Defendant to make Cooper's estate whole by providing compensation for past pecuniary losses resulting from the unlawful practices described above, in amounts to be determined at trial.

        G.      Order Defendant to make Hudson, Moultrie, and Townsend whole by providing compensation for past and future pecuniary losses resulting from the unlawful practices described above, in amounts to be determined at trial.

        H.      Order Defendant to make Cooper's estate whole by providing compensation for past non-pecuniary losses resulting from the unlawful practices described above, including but not limited to emotional pain, suffering, inconvenience, loss of enjoyment of life, humiliation, and loss of civil rights, in amounts to be determined at trial.

        I.      Order Defendant to make Hudson, Moultrie, and Townsend whole by providing compensation for past and future non-pecuniary losses resulting from the unlawful practices

described above, including but not limited to emotional pain, suffering, inconvenience, loss of enjoyment of life, humiliation, and loss of civil rights, in amounts to be determined at trial.

J.  Order Defendant to pay Hudson, Moultrie, and Townsend punitive damages for its malicious and reckless conduct, as described above, in amounts to be determined at trial.

K.  Grant such further relief as the Court deems necessary and proper in the public interest.

L.  Award the Commission its costs of this action.

## JURY TRIAL DEMAND

The Commission requests a jury trial on all questions of fact raised by its complaint.

DATED this the 22nd day of July, 2019.

Respectfully submitted:

**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

JAMES L. LEE
Deputy General Counsel
131 M Street, NE
Washington, DC 20507

GWENDOLYN YOUNG REAMS
Associate General Counsel

LYNETTE A. BARNES
Charlotte District Office Regional Attorney

KARA GIBBON HADEN
Supervisory Trial Attorney

s/*Rachael S. Steenbergh-Tideswell*
RACHAEL S. STEENBERGH-TIDESWELL
South Carolina Federal Bar No. 10867
Senior Trial Attorney
Charlotte District Office
129 West Trade Street, Suite 400
Charlotte, North Carolina 28202

Telephone: (704) 954-6472
Facsimile: (704) 954-6412
Email: rachael.steenbergh@eeoc.gov

**ATTORNEYS FOR PLAINTIFF**

20